UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:19 CR 252 AGF |
| RICKY D. HOLLINS, a/k/a "RJ", | ) |
| Defendant. | ) |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant RICKY D. HOLLINS, represented by defense counsel JUSTIN K. SUMMARY, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(C), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Distribution of a Controlled Substance, a lesser offense necessarily included in Count I of the charge, the government agrees to move for the dismissal as to the defendant of Counts II and III at the time of sentencing. Moreover, the United States

1

agrees that no further federal prosecution will be brought in this District relative to the defendant's distribution of any controlled substance and the resulting death of C.N. on April 11, 2018; or as to the defendant's distribution of a controlled substance during any "controlled purchase" made by law enforcement in April 2018, or; or as to defendant's possession of controlled substances and firearms on April 17, 2018, of which the Government is aware at this time.

Defendant acknowledges that this disposition confers upon him the benefit of eliminating the 20-year mandatory minimum sentence that would be required if he were to be convicted of Count I of the Indictment. The parties agree that the controlled substance distributed by defendant to C.N. was the "but for" cause of the death of C.N. As a result, the plea agreement establishes a more serious offense than the "offense of conviction." Section 1B1.2(c) provides, "[a] plea agreement (written or made orally on the record) containing a stipulation that specifically establishes the commission of additional offense(s) shall be treated as if the defendant had been convicted of additional count(s) charging those [sic] offense(s)." Pursuant to Section 1B1.2, the parties agree that the Court should apply the guidelines applicable to the more serious offense as established herein and admitted under oath by defendant. The parties recognize that the maximum possible penalty remains 20 years pursuant to Title 21, United States Code, Section 841(b)(1)(C) and Section 1B1.2, Application Note 1.

**Pursuant to Rule 11(c)(1)(C), Federal Rules of Criminal Procedure, the parties agree that the defendant's sentence should be 108 months. This agreement shall abide, notwithstanding the application or non-application of any particular Sentencing Guidelines, including any Guidelines contemplated by this agreement. If the Court**

**informs the parties prior to sentencing that it will reject this agreement or that it intends to sentence defendant to a sentence not in conformity with this agreement, then either party may withdraw from the plea agreement and the defendant will have an opportunity to withdraw his guilty plea pursuant to Rule 11(c)(5).**

The defendant also agrees, pursuant to the guilty plea to the lesser offense necessarily included in Count I, to forfeit to the United States all firearms subject to forfeiture under the applicable statute(s), including but not limited to those listed in the Forfeiture Allegation.

### 3. ELEMENTS:

As to the lesser offense necessarily included in Count I, the defendant admits to knowingly violating Title 21, United States Code, Section 841(a)(1), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:
and;

1. That on April 11, 2018, defendant distributed fentanyl, a Schedule II controlled substance, and;

2. That he did so knowingly and intentionally.

### 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

On April 11, 2018, Florissant Police Department officers responded to an address in the 200 block of St. Regis Lane in Florissant, Missouri on a "sick case." Upon arrival, officers encountered C.N., who was cold to the touch and had white foam coming from his mouth.

3

According to witness S.C., C.N. had last been seen alive on the previous evening. C.N. was pronounced deceased, and the medical examiner determined that C.N. died of "acute intoxication with fentanyl and cocaine." The medical examiner further determined that C.N. would not have died "but for" the ingestion of the fentanyl.

Witness S.C. advised police that a group of people, including herself, had purchased drugs from "RJ" on the previous evening. According to S.C., C.N. had ingested some of the drugs acquired from "RJ." At the request of police, S.C. drove with police to show them where "RJ" lived. S.C. directed police to a residence on Hancock Avenue, where she pointed out a 2004 Infiniti passenger vehicle, identifying it as "RJ's" vehicle. The vehicle was registered to a female at the Hancock Avenue address. Law enforcement databases revealed that Ricky D. Hollins also resided at the same address.

Officers constructed a six-person photo array containing a photograph of Ricky Hollins and five similar-looking individuals. S.C. was asked whether the person she knew as "RJ" was depicted in the photo array. S.C. identified the photograph of Ricky Hollins as "RJ." S.C. also consented to a search of her cellular phone, warning that she had deleted her communications with "RJ" after finding C.N. deceased. Nevertheless, police retrieved from her "contacts" a telephone number ending in 4552 saved under the name "RJ."

Other witnesses corroborated S.C.'s statements about purchasing drugs from "RJ," and also identified the photograph of Ricky Hollins from six-person photo arrays presented to each witness individually.

Following C.N.'s death, the Florissant Police conducted surveillance of Ricky Hollins over a period of approximately one month. During that month, they observed him conduct what

appeared to be hand-to-hand drug transactions. He was observed on multiple occasions entering and leaving the Hancock Avenue residence. Detectives also utilized a confidential informant to make controlled purchases from Ricky Hollins. On these occasions, the confidential informant contacted Hollins at the 4552 telephone number stored in S.C.'s telephone. During one transaction, the confidential informant advised Hollins that C.N. had died after using the drugs Hollins had sold. Hollins responded, "I guess he shouldn't have taken that much."

Laboratory analysis on the substance(s) purchased from Hollins confirmed the presence of fentanyl.

On April 17, 2018, Florissant Police executed a search warrant at Hollins' Hancock Avenue address. Hollins was present inside the residence at the time of the execution of the warrant. Hollins briefly attempted to escape out a rear window but aborted his attempt when he noticed officers in the yard. During a search of the residence, officers recovered two firearms and a small amount of fentanyl, along with a digital scale, numerous empty gelatin capsules, and a cellular telephone, the telephone number of which ended in 4552.

In a post-Miranda interview, Hollins admitted to utilizing the 4552 telephone number and acknowledged that he had been selling heroin but switched to fentanyl because more people wanted fentanyl than heroin. Hollins advised that he paid the household bills and had purchased the 2004 Infiniti passenger vehicle with cash he made from selling fentanyl. Hollins described in detail his method for cutting and packaging fentanyl, and informed police that he could make up to $1,000 per day selling fentanyl.

## 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 20 years years, a fine of not more than $1,000,000.00, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not less than 3 years.

## 6. U.S. SENTENCING GUIDELINES: 2018 MANUAL:

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that he following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

### a. Chapter 2 Offense Conduct:

**(1) Base Offense Level:** The parties agree that the base offense level is 38, as found in Section 2D1.1(a)(2). The parties agree that the fentanyl distributed by Hollins was the "but for cause" of the death of R.N. and, pursuant to Section 1B1.2(c), this Court should apply the base offense level applicable to a distribution resulting in death.

**(2) Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply: None. The parties are in agreement that the firearms seized on April 17, 2018 was not connected to the offense of conviction.

### b. Chapter 3 Adjustments:

**(1) Acceptance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to

6

plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**(2) Other Adjustments:** The parties agree that the following additional adjustments apply: None.

**c. Other Adjustment(s) and Disputed Adjustments:** None.

**d. Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 35. The parties agree, however, that the joint recommendation for a sentence of 108 months shall abide, notwithstanding the application or non-application of any particular United States Sentencing Guidelines or the Court's determination of the Base Offense Level, the Total Offense Level, or the Criminal History Category.

**e. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**f. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any

Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** In the event the Court accepts the plea and sentences defendant to a total term of 108 months, both parties waive all rights to appeal all sentencing including Criminal History and irrespective of whether it affects the Base Offense Level, Total Offense Level, or Criminal History Category.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be

8

sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**

Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing. Money paid by

the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration and costs of supervision. The defendant agrees that any fine imposed by the Court will be due and payable immediately. In addition, the Court may impose restitution (in addition to any penalty authorized by law) which will also be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

**g. Forfeiture:** The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The

defendant knowingly and intelligently waives all constitutional and statutory challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees that said items may be disposed of by law enforcement officials in any manner.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the

waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except

where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring or except as otherwise provided in paragraph 2 herein.

3/12/2021
Date

/s/ SIRENA MILLER WISSLER #55374MO
Assistant United States Attorney

3/12/2021
Date

RICKY D. HOLLINS
Defendant

3/12/21
Date

JUSTIN K. SUMMARY
Attorney for Defendant

14